1   Kyndra S. Miller, CASBN: 224343
    Randolph E. Daar, CASBN: 88195
2   Brian Ford, CASBN: 305023
    506 Broadway
3   San Francisco, CA 94133
    Telephone: 415/986-5591
4
    Attorneys for Plaintiffs
5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   JESSE VANG; WANG CHANG; JOUA          No.
     CHAO MOUA; ALEXANDER VANG;
12   DANG XIONG; DOLLARSAI YURGH;
     JOUA YENG VANG; MANISY MOUA;
13   POUA VANG; RICHARD VANG; and
     DOES 1-200,
14                                         **COMPLAINT FOR DECLARATORY RELIEF,**
                    Plaintiff,             **TEMPORARY RESTRAINING ORDER,**
15                                         **PRELIMINARY INJUNCTION, PERMANENT**
                                           **INJUNCTION AND DAMAGES**
16          v.

17   SHERIFF JON LOPEY, individually and in
     his capacity as Sheriff for the COUNTY      JURY TRIAL DEMANDED
18   OF SISKIYOU; COLLEEN SETZER,
     individually and in her capacity as Clerk
19   for the COUNTY OF SISKIYOU; ALEX
     NISHIMURA, individually and in his
20   capacity as an agent of the CALIFORNIA
     SECRETARY OF STATE; the COUNTY
21   OF SISKIYOU; CALIFORNIA
     DEPARTMENT OF FORESTRY AND
22   FIRE PROTECTION Does 1-20, in their
     individual capacity; and DOES 1-20,
23   inclusive.

24
                    Defendants.
25

26

27

28

                                1

## INTRODUCTION

1. The local government in Siskiyou County is engaged in a systemic campaign to deprive Plaintiffs, and other members of the Hmong community, of their right to vote, and their right to the exclusive use and enjoyment of their private property.  Plaintiffs bring this action for injunctive relief and damages, to preserve these fundamental rights to vote and own property, as guaranteed by the United States Constitution and the Constitution of the State of California. The Fifteenth Amendment to the United States Constitution guarantees the People the right to vote, regardless of race or ethnicity, enforceable against State and local governments by the Fourteenth Amendment, which also guarantees equal protection of the law.  Article 2, Sec. 2 of the California Constitution guarantees California residents the right to vote, and Article 1, Sec. 7 guarantees the right to due process and equal protection.

2. Despite these well-established rights, defendants conspired to disenfranchise Plaintiffs by challenging their status as California residents through racially discriminatory implementation and enforcement of County Ordinances, and as to some plaintiffs, threatened prosecution.

3. These ordinances require a County-approved water and sewer or septic tank for any residential structure or trailer, as a prerequisite to habitation, and also to the cultivation of medical Cannabis. However, these Ordinances were either not implemented or not enforced until significant numbers of Hmong people began purchasing land in Siskiyou County. Then, when Hmong residents attempted to register to vote, listing their property as their residence, Defendants systematically blocked these attempts under the auspices of the County Ordinances.  Defendants engaged in a coordinated campaign, utilizing State

2

and County agencies, while armed with assault rifles and wearing commando-style body

armor and uniforms.  Defendants used voter registration information to locate and

intimidate Plaintiffs - and other Hmong people - on their properties, questioning their

residency and registration status, while also issuing misdemeanor citations for violations

of County Ordinances and threatening Hmong residents with felony prosecution and jail if

they attempted to vote. Defendants continue to enforce County Ordinances in a racially

discriminatory manner, including even more restrictive ordinances passed in the tainted

June 7, 2016 election in Siskiyou County (de facto gerrymandering).

4.  Since the passage of local county Measures T and U in the June 7, 2016 primary, which

unilaterally declared the outdoor cultivation of medicinal Cannabis a public nuisance

(Siskiyou Co. Code sec. 10-14.030) and created a civil enforcement procedure which

subverts the traditional warrant requirements of the Fourth Amendment (Siskiyou Co.

Code sec. 10-14.090) ("2016 Ordinance"), the Defendants have engaged in the racially

selective prosecution of Hmong residents under the new 2016 Ordinances.  Defendants

have deliberately policed subdivisions where high concentrations of Hmong property

owners are known to reside, notices of nuisance violations have been issued

overwhelmingly to Hmong property owners as opposed to white property owners, and

abatement proceedings have reflected a similar disproportion of Hmong property owners

prosecuted under the 2016 Ordinance.

5.  Defendants created and continue to maintain a climate of fear, intimidation, and racially

motivated disenfranchisement and persecution, under the color of law, against Plaintiffs

and other Hmong Siskiyou County residents, such that many did not vote in the June 7,

2016 primary election, and fear voting in the November 8, 2016 general election.

Moreover, through the racially selective intimidation of Hmong voters and enforcement of

3

County Ordinances against Hmong residents, Defendants' actions constitute an unconstitutional taking in violation of the Fifth and Fourteenth Amendment, and implicate the protections guaranteed by the Fourth Amendment. Thus, injunctive relief and damages are necessary to restore and enforce these constitutional principles for Plaintiffs and the Hmong residents of Siskiyou County.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

7. The claims alleged herein occurred in the County of Siskiyou. Venue of this action lies in the United States Court for the Eastern District of California (28 U.S.C. §1391(b)(2).)

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

A. HISTORICAL BACKGROUND:

8. The People's right to vote, foundational to American Democracy, has a hard fought history of civil rights achievement in the face of racial brutality and systematic oppression in this country.  The right to vote is inherent in the architecture of our representative government, set forth in the Articles, which became the foundation of the United States Constitution. However, in its earliest and most repressive form, the right to vote was restricted on the basis of race and class, to white male landowners. Only after the Civil War was the full right to vote extended to African-American males via the Thirteenth Amendment, ratified in 1865. In response to local racial discrimination and brutality ("Jim Crow laws"), the Fourteenth and Fifteenth Amendments were adopted in 1868 and 1870,

4

respectively, extending the enforcement of Constitutional protections against state and local governments so that the equal protection of the laws and the fundamental right to vote could not be restricted on the basis of race.

9.   The Hmong people fled to America as political refugees in the 1970s, after being subjected to chemical warfare during the Vietnam War. In the first and second Indochina Wars, the United States recruited over four thousand members of the Hmong population in Laos to fight against forces from North and South Vietnam, as well as communist Pathet Lao insurgents ("the secret war"), during the Vietnam War and the Laotian Civil War. Their peaceful agrarian lives in the hills of northern Laos were radically uprooted when they were recruited by the United States government, which sacrificed thousands of Hmong people in deadly missions that ultimately, it is said, saved countless American lives.

10.  Despite the fact that the United States government recruited and trained Hmong people to fight on its behalf, and depended on their bravery, nothing was done to protect the Hmong people from the genocide waged against them after the United States pulled out of the war. There is overwhelming evidence of chemical and biological warfare waged against the Hmong people, who were exposed to man-made toxins and biological agents that killed thousands.

11.  After the war, the Hmong people risked their lives to escape their war-torn country. They ended up in abysmal conditions in refugee camps in Thailand. These camps were virtually closed to the outside world, and Thai guards abused the Hmong people.

12.  In the 1970s, hundreds of thousands of Hmong refugees fled to the United States seeking political asylum. The majority of Hmong refugees in America, primarily residing in Northern California, came mainly from Laos as political refugees post-Vietnam.

B. FACTS SUPPORTING CAUSES OF ACTION:

13. In 2015, and after the arrival of significant numbers of Hmong people who purchased plots of land in Siskiyou County, the Board of Supervisors passed Local Ordinance SC 10-14 ("2015 Ordinance"), with the stated purpose of regulating Cannabis cultivation. The 2015 Ordinance, as enforced by Defendants Siskiyou County Development Department ("CDD") and the Sheriff, almost exclusively targeted people of Hmong ethnicity, including Plaintiffs herein, and interfered with Plaintiffs' right to reside on their own rural parcels.

14. The 2015 Ordinance does not impact homeowners with a residential structure and a connection to public works in the same way that it impacts rural homeowners in the county, who traditionally have not had access to public works or the requirement of a residential structure on the property.  The Hmong people have settled in the rural areas of Siskiyou County, primarily in County Supervisorial Districts 1 and 5.

15. The 2015 Ordinance gave Sheriff Lopey unfettered power to target Hmong homeowners in enforcing the ordinance. Sheriff Lopey launched a very public campaign to rid the county of these so-called "newcomers" - code for people of Hmong descent.  Sheriff Lopey has repeatedly referred to Hmong people as "criminals," "gang members" and "cartel members." Sheriff Lopey, under color of authority, spewed this racist invective for over two years for the sole purpose of justifying his actions, demonstrating a pattern of disproportionate enforcement of the 2015 Ordinance against people of Hmong descent.

16. In July 2015, Sheriff Lopey served Hmong property owners with "Marijuana Abatement Notices" in connection with the enforcement of the 2015 Ordinance.  When nearly 300 Hmong people showed up at the hearing location, it was abundantly clear that Sheriff

6

Lopey and the CDD were only enforcing the 2015 Ordinance against Hmong county residents and property owners.

17. In January and February of 2016, large numbers of Hmong residents attempted to register to vote in Siskiyou County, using the County assigned parcel numbers of their property as their residential addresses.  These registrations were conducted online and by mail, and were submitted directly to Siskiyou County Clerk Colleen Setzer.  According to Setzer, she was responsible for 1) reviewing voter registrations, and 2) submitting them to the California Secretary of State for processing.

18. Setzer began flagging registration forms for voter fraud investigation after her office received over 1,800 new voter registrations from the unincorporated areas of Siskiyou County.  Setzer then contacted Sheriff Lopey and District Attorney Kirk Andrus to notify them about the new voter registrations prior to contacting the Secretary of State.

19. In or around May of 2016, Plaintiffs and large numbers of Hmong residents who submitted voter registrations received letters on County Clerk Colleen Setzer's letterhead, in envelopes with Setzer's office as the return address, proclaiming that "the voter registration card you recently sent to this office does not contain all of the information required by law. You may not be eligible to vote until this information is provided to us." These letters were not dated or signed.

20. During this same time period, plaintiffs and large numbers of Hmong residents who submitted voter registrations received letters on the California Secretary of State's Letterhead, signed by Secretary of State Investigator Alex Nishimura (Badge #5), notifying the recipient that "This office is conducting an investigation regarding a large number of online California Voter Registration forms that were submitted with a Siskiyou County voting residence." The letter also prompted the recipient to "review the enclosed

California Voter Registration form then respond to the statements/questions listed on the questionnaire page." The questionnaire asked the recipient: (1) if they consented to having the information entered on the California Voter Registration form; (2) if they consented to the entering and submission of their information on the California Voter Registration form; (3) if someone assisted them with completing the California Voter Registration form, and for the identity of that person; (4) where the California Voter Registration form was completed; (5) if there were other people also registering to vote at that location; and (6) if the person named on the California Voter Registration form "live[s] at this address."

21. In or around late May 2016 to early June 2016, one or more Sheriff's officer(s), agent(s) of CAL FIRE, and Nishimura went to the residence of each Plaintiff under the guise of investigating voter fraud and/or SCC 10-14 code enforcement violations. During these encounters, plaintiffs were told that they were not allowed to live on their land without a permitted residential structure, an approved water source, and a wastewater disposal system. In addition, Plaintiffs were told that they could not use their property to register to vote, and would be prosecuted if they attempted to vote on June 7, 2016.

22. On June 3, 2016, the District Attorney and the Sheriff issued a joint press announcement confirming that State of California investigators, with the assistance of the Siskiyou County District Attorney's Office and the Siskiyou County Sheriff's Office, a Cal Fire investigator, the Siskiyou County Assessor, County Clerk, and Planning Department conducted a "series of voter fraud investigations" on May 31, 2016 and June 1-2, 2016 in three areas of Siskiyou County: the Klamath River Country Estates in Hornbrook, Mt. Shasta Vista, and Mt. Shasta Forest; all of which are located in Siskiyou County District 5. The press release also confirmed that misdemeanor citations were issued for "county ordinance violations." In this press release, Sheriff Lopey warned: "Voter fraud and

8

illegal voting provisions of law *[sic]* are felony offenses that carry a penalty of up to 3 years for each violation". In the same press release, District Attorney Kirk Andrus commended the State for taking the voter fraud allegations seriously, and stated: "I put those on notice that have registered to vote at a place where they do not live in an effort to fraudulently impact an election, and then follow through by casting a vote, that we will pursue these cases very seriously."

23. Following this announcement, the American Civil Liberties Union, the Secretary of State, the California Attorney General's Office, and the U.S. Department of Justice took steps to monitor the election in Siskiyou County. It became apparent that the vast majority of Hmong voters—including plaintiffs—were not listed on the rolls of registered voters, and those who were not deterred were forced to vote provisionally.

24. On June 7, 2016 (the California primary), Siskiyou County Code Enforcement Officer Seth Dressler patrolled rural areas with high concentrations of property owned by Hmong residents to document violations of the 2015 Ordinance for prosecution by the County. Using field glasses and a camera, Dressler surveilled and photographed the properties of Plaintiffs and other people of Hmong ethnicity. These reports would later be used to identify properties to be targeted in the enforcement of the 2016 Ordinance.

25. In subsequent statements to the press, Sheriff Lopey confirmed that officers visited 39 properties during the "voter fraud investigation" and acknowledged that one of his officers was armed with a "service rifle." Lopey was quoted as saying that the demographics in the area have "shifted dramatically" in recent years, and stating: "I believe some of these Asian Americans were manipulated, perhaps cajoled or coerced into filling out voter registration cards"; and "[a] lot of these people haven't been here for a long time."

26. Voter registration totals published by Siskiyou County on May 23, 2016 indicate a total of 4,590 voters registered to vote in County Supervisorial District 1, and 5,300 registered to vote in District 5. The other three Districts are similarly populated.

27. On July 7, 2016, County Clerk Setzer certified the results of the election. In the reported results, 2,928 of 4,591 registered voters in County Supervisorial District 1 voted for the County Supervisor for District 1, and County Supervisor Brandon Criss took 99.69% of the vote. There was no election for the position of County Supervisor for District 5. County Measures T and U, prohibiting outdoor cultivation of medical marijuana and eliminating the Fourth Amendment's warrant requirement for medical Cannabis code enforcement, received 16,659 votes out of 26,382 registered voters in the county. Measure T passed, with 9,739 votes for, and 6,467 votes against. Measure U passed with 9,570 votes for, and 6,676 votes against.

28. At least 360 Hmong residents attempted to register to vote in Siskiyou County for the June 7, 2016 election. Of those, at least 200 were not listed on the voter rolls at the time of the June 7, 2016 election. At least 50 Hmong residents of Siskiyou County did not vote for fear of prosecution or violence at the hands of County officials.

29. Measures T and U took effect on July 2, 2016. Hmong residents began receiving notices of nuisance violations under the new County Ordinances as early as July 12, 2016. On July 20, 2016, deputies of the Siskiyou County Sheriff's Office issued a public statement in the media claiming that 21 nuisance violation notices had been issued in the first week of enforcement. At present, at least 33 of the total nuisance violation notices issued under the new 2016 Ordinance have been issued to Hmong property owners in County Supervisorial District 1. Of these 33 nuisance violations, only 9 have been scheduled for an abatement hearing. The 33 respondents in abatement hearings docketed for

consideration of nuisance violations under the 2016 Ordinance are Hmong property owners in County Supervisorial District 1.

30. Moreover, Defendants continue their campaign of persecution and terror, raiding private property, "eradicating" plants, and reaffirming their intent to prosecute and intimidate Plaintiffs and Hmong property owners in the county. On or about August 29, 2016, Code Enforcement Officer Seth Dressler patrolled the subdivision of Iron Gate, located in Supervisorial District 1 and known to contain a concentration of Hmong property owners. Dressler issued at least 10 nuisance violations under the 2016 Ordinance to Hmong property owners, including Plaintiffs. Administrative hearings were timely requested by all 10 of these Hmong property owners on September 2, 2016.

31. On or about September 7, 2016, Defendants executed a series of search warrants in a systematic sweep of the Iron Gate subdivision. These warrants were served primarily on Hmong residents, including Plaintiffs, and property owners who had received nuisance violations on August 29 and requested hearings on September 2 under the 2016 Ordinance. In the execution of these search warrants, residents who were present were handcuffed and held at gunpoint while their properties were ransacked, and unseized belongings damaged or abused. Those residents who were not present on their properties for the raids returned to find their unseized belongings strewn about the ground of their property, empty water bottles and food wrappers strewn about, and furniture rearranged or upended. The raiding defendants searched seized personal property, including the clear-cutting and seizure of all medicinal Cannabis plants. No arrests were made and no citations were issued.

32. On September 7, 2016, counsel for Plaintiffs sent a Notice to Cease and Desist to Defendants, demanding a cessation to the raiding of properties which had previously

11

received nuisance notices and requested administrative hearings under the 2016 Ordinance.  On September 8, 2016, County Counsel Natalie Reed sent a letter to Plaintiffs' counsel advising that the September 7, 2016 raids were "potential ongoing criminal enforcement processes" and not administrative abatements.  Reed advised that "the County's use of administrative abatement proceedings is not the exclusive remedy for violations of its Code.  The County may, in addition to instituting administrative proceedings, also simultaneously pursue violations criminally or through civil actions."

## PARTIES

### A. Individual Plaintiffs

*Jesse Vang*

33. Plaintiff JESSE VANG (age 45) is a property owner in Siskiyou County, California.  Mr. Vang purchased the property in March 2016.

34. No well or septic system existed on the property when Mr. Vang purchased it. Mr. Vang began taking steps to obtain the proper permitting in order to bring the property up to code.

35. On June 2, 2016, Mr. Vang was working on his property when he heard someone call out his name.  When he turned towards the direction of the voice, he saw a sheriff's deputy standing at his gate holding an AR-50 assault rifle.

36. Mr. Vang asked the deputy the purpose of his visit, and the deputy informed him that he was investigating voter fraud.  There were two vehicles parked outside of the gate, and in a location where Mr. Vang could not see their respective license plates.

37. When Mr. Vang opened the gate for the deputy, a second plain clothed officer approached him and asked him for his name and identification.  When Mr. Vang asked the officer for

12

his name and badge, the officer initially refused to disclose this information. Eventually, Mr. Vang was able to identify this individual as Nishimura, an agent of the California Secretary of State.

38. Nishimura told Mr. Vang that he would go to jail if he voted on June 7, 2016 because he did not register properly online.

39. Mr. Vang was terrified by the interaction with Nishimura, and other unidentifiable sheriff's deputies and/or government agents and employees, and felt particularly threatened by the presence of the assault rifles.  Mr. Vang grew up in Laos and Thailand during the Vietnam War.  This experience with the Defendants triggered many traumatic childhood memories for Mr. Vang and put him in a state of mental panic.  He has had continuous nightmares since the incident, and is afraid to be alone on his property.

40. After June 2, 2016, Mr. Vang went to the Siskiyou County Clerk's office and spoke with County Clerk Setzer.  He received a letter from the County Clerk stating that he was not registered to vote.  Setzer informed him that he could not use his property to register to vote.  She told him to register to vote with an out of county address.

### Wang Chang

41. Plaintiff WANG CHANG (age 47) is a homeowner in Siskiyou County, California, who purchased his property in May 2016.

42. On or about June 1, 2016, Mr. Chang was on the property with his brother when a Ranger and another white vehicle drove onto the property. Mr. Chang and his brother began to approach the vehicles when the rear passenger of the white car exited the vehicle holding a long black gun and pointed it at them.

43. Mr. Chang was confused and did not understand why these individuals were there with assault rifles.  He was terrified because he does not speak English.  He believed that they

13

1   were going to trying to kill him.

2   44. Mr. Chang fought for the United States in the Vietnam War, and seeing the assault rifle in

3   the ready position aimed at his body triggered memories of fighting in the war.  Panicked,

4   Mr. Chang and his brother fled, jumping two fences to escape the danger, hurting

5   themselves in the process.

6

7   45. Mr. Chang registered to vote using his property as his primary residence.  When he went

8   to vote on June 7, 2016, he was required to vote on a provisional ballot.

9   *Joua Chao Moua*

10   46. Plaintiff JOUA CHAO MOUA (age 58) is a homeowner in Siskiyou County, California.

11   Mr. Moua purchased his property in April 2016.  Mr. Moua registered to vote in May 2016

12   and used his property as his primary place of residence.

13

14   47. On June 2, 2016, two SUV's came to his property.  One person exited each vehicle.  One

15   person was in plain clothes, and the other in a police uniform.  Both people were carrying

16   sidearm guns, and the uniformed officer was also carrying an assault rifle.  Mr. Moua

17   observed them trying to open the gate to enter his property.

18   48. Mr. Moua heard stories about armed police officers visiting properties owned by Hmong

19   people.  When he saw the armed officers at his gate, he was terrified.  He watched the

20   armed individuals from a hiding place on his property.  After thirty minutes, the armed

21
22   individuals left his property.

23   49. Mr. Moua underwent an Angioplasty and Vascular Stenting in 2000.  The incident on June

24   2, 2016 caused him to have difficulty breathing, which elevated his heart rate and blood

25   pressure.  After the armed individuals left his property, Mr. Moua began experiencing

26   sharp pain in his chest and fainted.

27
28   50. Mr. Moua was rushed to the Redding Regional Hospital Emergency Room on June 2,

2016, where he was prescribed medication for his heart complications.

*Alexander Vang*

51. Plaintiff ALEXANDER VANG (age 26) is a homeowner in Siskiyou County, California. Mr. Vang purchased the property in March 2016.

52. On or about June 2, 2016, Mr. Vang was on his property when two vehicles arrived - one was a marked sheriff's vehicle and the other was unmarked.

53. One sheriff's officer exited the marked vehicle armed with a handgun and an assault rifle hanging over his shoulder. A plain clothed person remained in the unmarked vehicle and was armed with a handgun.

54. Mr. Vang approached the sheriff's officer as he exited the vehicle and introduced himself. The sheriff's officer asked him if he had a well and a septic tank. Mr. Vang responded in the affirmative and informed the officer that he had applied for well and septic tank permits.

55. The man in the unmarked vehicle approached Mr. Vang and introduced himself as a "Siskiyou County District Attorney." The attorney told him that he was not registered to vote because he did not have a mailing address.

56. Mr. Vang did not vote on June 7, 2016 because of the information he received from the attorney on or about June 2, 2016.

*Dang Xiong*

57. Plaintiff DANG XIONG (age 27) is a homeowner in Siskiyou County, California. Mr. Xiong purchased his property in April 2016.

58. There were no structures on the property when he purchased it. Mr. Xiong registered to vote in May 2016, shortly after he purchased the property.

59. On the morning of June 2, 2016, a white pickup truck, a CAL FIRE truck and a four-door

sedan approached Mr. Xiong's gate. A sheriff's deputy exited the pickup truck and scanned Mr. Xiong's property with field glasses. When he noticed Mr. Xiong standing in the distance, he waved for him to approach the vehicles.

60. As Mr. Xiong approached the vehicles, the sheriff's officer and the person in the CAL FIRE truck pulled out two assault rifles. The sheriff's officer and the person in the CAL FIRE truck were wearing camouflage, bulletproof vests and had pistols on their hips. One man (who identified himself as a representative of the State) and one female with a badge exited the sedan.

61. The sheriff's officers asked Mr. Xiong to identify himself, which he did. The female asked him if he had registered to vote, and he replied affirmatively. The female asked Mr. Xiong for identification, and he handed it to her. She passed the identification to the sheriff's officer.

62. The sheriff's officer told Mr. Xiong that he could not stay on his property without a sewer and water, and he was not allowed to have a "Port-a-Potty" on his property. Mr. Xiong told the officer that he was "in line" and waiting for the contractor to drill for a well. The sheriff's officer said that he did not care and wrote Mr. Xiong a citation.

63. The sheriff's officer also told Mr. Xiong that he could not vote without a physical address, and if he did vote - he would go to jail.

64. Mr. Xiong was afraid to vote after this interaction with armed sheriff's officer and CAL FIRE agent(s). Mr. Xiong felt that the armed individuals were ready to "gun someone down." However, Mr. Xiong did go to his polling place on June 7, 2016, but was told that he had to vote using a provisional ballot.

65. On August 29, 2016, Mr. Xiong received a nuisance notice pursuant to the 2016 Ordinance. On September 2, 2016, Mr. Xiong requested an administrative hearing under

16

the 2016 Ordinance.

66. On September 7, 2016, Mr. Xiong's property was one of the Iron Gate properties raided

pursuant to a search warrant. Mr. Xiong was not home at the time of the raid. When he

returned to his property, he found that some of his property, including medicinal Cannabis

plants, had been clear-cut and seized. Additionally, he found that his trailer had been

ransacked, with his unseized personal belongings strewn about the floor of his trailer and

furniture upended. He found that several bottles of his drinking water had been drank, and

the waste from those water bottles and other wrapped food items were strewn about. The

gate to his lock was cut and his gate was damaged. Mr. Xiong was not cited nor arrested,

and he presently does not have any charges filed against him other than the misdemeanor

citation issued to him on June 2, 2016, which is pending before the California Superior

Court, County of Siskiyou.

### Dollarsai Yurgh

67. Plaintiff DOLLARSAI YURGH (age 51) is a homeowner in Siskiyou County, California.

Mr. Yurgh purchased his property in February 2016.  The only structure on his property at

the time of purchase was an 8 x 8 shed and a "Port-a-Potty."

68. Mr. Yurgh applied for county well and septic permits.  His permit applications are on file

with the County, and he is waiting for the county to conduct a "pour test."

69. In early June of 2016, Mr. Yurgh was on his property with his brother when he noticed

three vehicles drive onto a neighboring lot: a CAL FIRE truck, a white Ford pickup truck

and a small passenger vehicle.  The white Ford pickup truck drove over to Mr. Yurgh's

gate; two sheriff's officers exited the vehicle, and *ordered* Mr. Yurgh to approach them.

One of the sheriff's officers was carrying an assault rifle.

70. As Mr. Yurgh approached them, one sheriff's officer yelled, "Show me your hands!!"  The

plain clothed officer flashed a badge and stated that he was with the Secretary of State. He informed Mr. Yurgh that he was there to "audit for the vote." The agent from the Secretary of State's office was holding a piece of paper with a list of names, and told Mr. Yurgh that those names were registered to his property.

71. The agent from the Secretary of State's office told Mr. Yurgh that he could not vote without a physical address, and must be a resident in the county for one hundred sixty (160) days before being eligible to vote. He also told Mr. Yurgh that he would go to jail if he tried to vote without a physical address.

72. Mr. Yurgh did not vote because he did not want to go to jail.

*Joua Yeng Vang*

73. Plaintiff JOUA YENG VANG (age 50) is a property owner in Siskiyou County, California. Mr. Vang purchased his property in February 2016.

74. On or about June 1, 2016, Mr. Yang and his girlfriend noticed a white pickup truck drive onto his property. A second truck was parked outside of the gate. Three people (two male, one female) exited the vehicles and approached Mr. Yang. One of the men was white and the other appeared to be Native American.

75. The white man asked Mr. Vang for identification, which he provided. The white man then asked him if he had registered to vote. Mr. Vang replied affirmatively. The white man asked him for the address he used when he registered. Mr. Vang said he did not remember. Mr. Vang then asked the white man to identify the agency he was representing. The white man said he worked for the Siskiyou County Sheriff's office, and then asked Mr. Vang to write down his address. Mr. Vang wrote down his Assessor's Parcel Number ("APN").

76. This sheriff's officer told Mr. Vang that he had no right to vote - even if he owned the

18

property.  The sheriff's officer told him that he could not, and should not vote because - if he did - he would go to jail.

77. Mr. Vang became frightened and scared and started shaking.  Mr. Vang's girlfriend then asked the sheriff's officer if she could vote.  The sheriff's officer told her that if she used this property to vote that she would "go to jail for sure."

78. Mr. Vang and his girlfriend waited for the sheriff's officer and others to leave the property.  After they were out of sight, Mr. Vang immediately left the property.

79. Mr. Vang went to his polling place on June 7, 2016 and had to vote using a provisional ballot.  Mr. Vang is afraid to go to his property because he is scared that the officers will come back and arrest him.

*Manisy Moua*

80. Plaintiff MANISY MOUA (age 53) is in lawful possession of a property located in Siskiyou County, California, which her son purchased for her in December 2015.  Ms. Moua used the address connected to this property on her voter registration.  She has resided in a mobile home on that property since December 2015.

81. On June 2, 2016, Ms. Moua was driving home when she noticed two sheriff's officers (one in an SUV, the other in a sedan) on her neighbor's property.  One of the sheriff's officers was armed with a "long gun," and the other was carrying a handgun.  As she drove past her neighbors' property, she noticed that the officers were walking back to their cars.

82. As Ms. Moua drove to her property, the two sheriffs' followed her in their vehicles.  When she stopped and exited her car at the gate of her property, the officers pulled up behind her.  The sheriff's officer with the handgun approached her at the gate.

83. The sheriff's officer asked her if she was registered to vote.  She replied affirmatively.

19

The sheriff's officer then told her that she could not vote because she does not have a septic tank or water.

84. Ms. Moua was scared by the encounter because she heard about other people in the Hmong community being harassed by local sheriff's deputies. She feared they would come back and arrest her.

85. Ms. Moua received a letter from the Siskiyou County Clerk informing her that her voter registration had been processed. Ms. Moua voted by Mail. Ms. Moua received a second letter from the Siskiyou County Clerk's office informing her that her vote did not count.

### Poua Vang

86. Plaintiff POUA VANG (age 42) is a property owner in Siskiyou County, California. Mr. Vang purchased the property in March 2016.

87. Approximately two or three days before the election on June 7, 2016, Mr. Vang observed three people (two male, one female) walking around the perimeter fencing of his property. One male appeared to be a sheriff's officer, and the other male identified himself as an attorney. The female told Mr. Vang that he could not live on his property.

88. The male that identified himself as an attorney asked Mr. Vang if he had registered to vote. Mr. Vang replied in the affirmative. The attorney then told Mr. Vang that he would be in violation of the law if he registered to vote using his property address.

### Richard Vang

89. Plaintiff RICHARD VANG is a property owner in Siskiyou County, California.

90. On or about June 2, 2016, Mr. Vang was on his property when he heard cars coming up the hill. As they approached, Mr. Vang could see that there were two cars, a sheriff's vehicle and an unmarked vehicle. Mr. Vang's brother approached the vehicles when they reached the property.

20

91. Mr. Vang went down to speak to the sheriff's officers after they told his brother - Mr. Alexander Vang - that they wanted to speak to him. The sheriff's officer asked him if he had registered to vote. Mr. Vang replied in the affirmative. The sheriff's officer then told him that he could not vote without a physical address and a residential structure on the property. The sheriff's officer asked him about the well and septic system on the property. Mr. Vang informed them that the well and septic system were permitted.

92. Mr. Vang did not vote on June 7, 2016 because of this encounter.

93. Plaintiffs DOES 1-200 are resident homeowners in Siskiyou County who suffered similar fates as the plaintiffs described herein. In particular, they were visited by Defendants prior to the June 7, 2016 election and told that they were not allowed to vote and/or were in violation of SCC 10-14. Plaintiffs are ignorant of their true identities at this time and will amend the complaint once their true identities are known.

**B. Defendants**

94. Defendant COUNTY OF SISKIYOU is, and at all relevant times mentioned herein, a municipal corporation within the State of California.

95. Defendant SHERIFF JON LOPEY is, and at all relevant times mentioned herein, the sheriff of Siskiyou County. He is being sued in his individual and official capacities.

96. Defendant COLLEEN SETZER is, and at all relevant times mentioned herein, the Clerk for Siskiyou County. She is being sued in her individual and official capacities.

97. Defendant CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION (also known as CAL FIRE) Does 1-20, in their individual capacity.

98. Defendant ALEX NISHIMURA is, and at all relevant times mentioned herein, an employee of the California Secretary of State. He is being sued in his individual and official capacities.

21

99.Plaintiffs are not aware of the true names of defendants described herein as Does 1 through 20, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and therefore allege that each of the Doe defendants is legally responsible and liable for the injuries and damages hereinafter set forth, and that each of the said defendants directly and/or proximately caused said injuries and damages by reason of their violation of constitutional and legal rights.

100. Each of the defendants caused and is responsible for the unlawful conduct and resulting injuries by, including without limitation: personally participating in the unlawful conduct and/or acting jointly or conspiring with others who did so by authorizing, acquiescing or setting into motion such policies, plans or actions which led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; and by ratifying the unlawful conduct that occurred by agents and officers under its/their direction and/or control. Defendants, individually and collectively, had a duty to protect the constitutional and legal rights of Plaintiffs.  They failed to exercise due care in the enforcement of that duty.

101. In the commission of the acts alleged herein, Defendants, individually and collectively, acted as agent, servant, employee, partner, joint-venturer, co-conspirator and/or in concert with each of said other defendants; and in engaging in the conduct alleged herein, were acting with the permission, knowledge, consent and ratification of their co-defendants.

102. In the commission of the acts alleged herein, Defendants acted under color of law and during the course and scope of their employment with the County of Siskiyou or State of California.

103. Defendants actions were willful, wanton, malicious and oppressive, and done with total disregard for the civil rights, property rights and other legal rights of Plaintiffs as citizens

22

of the United States, thereby justifying the award of exemplary and punitive damages.

## STATEMENT OF DAMAGES

104.  As a result of the alleged acts and omissions, Plaintiffs have incurred, and will continue to incur, monetary damages for loss of personal property, liabilities incurred in trying to comply with the 2016 Ordinance in an unreasonable time period (which puts an unreasonable burden on Plaintiffs to, including without limitation, dig for wells in areas of the county with no known aquifers), and the loss of the use and quiet enjoyment of their real property,

105.  As a result of the alleged acts and omissions, Plaintiffs suffered, and will continue to suffer, general damages including, without limitation, pain, fear, anxiety, terror and other related trauma in an amount to be determined according to proof at trial. In addition, certain Plaintiffs have suffered physical injuries that impact their quality of life and daily life activities.

106.  As a result of the acts and/or omissions of Defendants, Plaintiffs have incurred, are likely to continue to incur, and/or may incur in the future, medical treatment and related recovery expenses in amounts to be determined according to proof at trial.

107.  The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious disregard for the rights of Plaintiffs. Plaintiffs therefore pray for an award of punitive and exemplary damages against Defendants according to proof at trial.

108.  Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs.

23

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION

[42 U.S.C. §1983 - Fourth Amendment Against All Defendants]

109.  Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

110.  In doing the acts and/or omissions alleged herein, Defendants and Does 1-20, and each of them jointly and severally, conspired to participate in the unreasonable search and seizure of Plaintiffs' properties in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

111.  Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard for Plaintiffs' rights.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SECOND CAUSE OF ACTION

[42 U.S.C. §1983 - Fourteenth Amendment Against All Defendants]

112.  Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

113.  In doing the acts and/or omissions alleged herein Defendants and Does 1-20, and each of them jointly and severally, were deliberately indifferent to the health and safety of Plaintiffs in violation of the Fourteenth Amendment to the United States Constitution. Alternatively, Defendants acted with purpose to cause harm.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

24

### THIRD CAUSE OF ACTION

### [42 U.S.C. §1983- MUNICIPAL LIABILITY]

114. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

115. The training policies of the Defendant County of Siskiyou were not adequate to train its sheriff's deputies and police officers to handle voter fraud investigations and building and safety code enforcement. The Defendant County of Siskiyou was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately. The failure of Defendant County of Siskiyou to provide adequate training caused the deprivation of the Plaintiffs rights; that is, the failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

### [42 U.S.C. §1983- SUPERVISORY LIABILITY AGAINST SHERIFF LOPEY]

116. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

117. At all relevant times, Defendant Sheriff Lopey was the Sheriff of the County of Siskiyou. Sheriff Lopey was the supervisor and/or manager of certain Defendants named herein.

118. Plaintiffs allege that Defendants deprived Plaintiffs of their right to be free from the use of unreasonable force, and punishment, and their right to quiet enjoyment of their real property under the Fourth and Fourteenth Amendments to the United States Constitution.

119. Plaintiffs allege on information and belief that Defendants knew or reasonably should have known that their conduct deprived Plaintiffs of their Constitutional rights, and failed to

25

prevent them from engaging in such conduct. Alternatively, Plaintiffs allege that Defendants showed a reckless and/or callous indifference to the Constitutional deprivations alleged herein.

120. Defendants' misconduct was the moving force that caused the injuries sustained by Plaintiffs.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.


FIFTH CAUSE OF ACTION

[42 U.S.C. §1983 - EMPLOYER LIABILITY AGAINST COUNTY OF SISKIYOU]

121. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

122. At all relevant times, the County of Siskiyou were the employer of the following named individual defendants: Sheriff Lopey, Colleen Setzer, and unknown Does 1-20. Alternatively, all named individual defendants were employees of the County of Siskiyou when they intentionally and/or negligently caused the harm to Plaintiffs.

123. Plaintiffs claim that the County of Siskiyou is responsible for the harm because Defendants were employees of the same when the harm occurred.

124. All of the defendant employees of the County of Siskiyou were acting within the scope of their employment when they directly and proximately caused harm to Plaintiffs.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CAUSE OF ACTION

### [NEGLIGENCE]

125. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

126. Defendants owe a duty of care to protect the residents in Siskiyou County from physical harm, including Siskiyou residents of Hmong descent.

127. Defendants breached the duty owed to Plaintiffs when they maliciously and recklessly entered onto their properties with an assault rifle and body armor and threatened Plaintiffs with incarceration if they exercised their right to vote and/or pursued Plaintiff's criminally in retaliation for exercising their constitutional rights.

128. These breaches caused Plaintiffs serious physical, mental and emotional injuries.

129. As a result of these injuries, Plaintiffs have suffered - and continue to suffer - damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### [NEGLIGENT HIRING/SUPERVISION]

130. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

131. Defendants County of Siskiyou, and Does 1 through 20, owe a duty to the residents of Siskiyou County to hire staff who are qualified and who have appropriate training, professional background, educational levels and expertise when enforcing the law.

132. Defendants breached this duty when they employed Sheriff Lopey, Colleen Setzer, and Does

27

1-200. The employers owed Plaintiffs a duty to investigate the intelligence aptitude, academic qualifications, mental and emotional stability of these individuals prior to putting them in a position of authority and control over the public, especially when they are armed with assault rifles.

133. Defendants breached their duty of care when they failed to provide appropriate training for the peace officers working in code enforcement and voter fraud investigations, and Colleen Setzer in connection with the laws governing voter registrations.

134. Defendants' breaches caused Plaintiffs serious physical, mental and emotional harm, including without limitation, fear of law enforcement officers, fear of retaliation by Siskiyou police and Sheriff's departments, fear of dying at the hands of law enforcement officers, nightmares about the being shot and killed by police officers, depression, generalized anxiety, post-traumatic stress, social anxiety phobia, insomnia, and sleep terror.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.


## EIGHTH CAUSE OF ACTION

[Cal Election Code § 14027 – Racially Polarized Voting]

135. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

136. In doing the act(s) and/or omission(s) alleged herein, Defendants and Does 1-20, each of them jointly and severally, did use an "at-large election" to pass Measures T and U, in an intentional, unlawful and selective way for the purpose of disenfranchising Plaintiffs specifically, and Hmong residents general.  Defendants' act(s) and/or omission(s) substantially affected the rights and privileges of members of Plaintiffs, a protected class, and hindered their ability to participate effectively in the political process.

137. Plaintiffs are a protected class as defined by the California Voting Rights Act §14026.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION

[Voting Rights Act, § 2 (52 USC § 10301) – Denial or abridgement of right to vote on account of

race or color through voting qualifications or prerequisites]

138. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all

prior paragraphs of this Complaint.

139. In doing the act(s) and/or omission(s) alleged herein, Defendants and Does 1-20, each of

them jointly and severally, imposed voting qualifications and/or prerequisites to voting,

and/or standards, practices, or procedures in a manner resulting in a denial or abridgement

of the right of Plaintiffs, citizens of the United States, to vote on account of race or color, or

in contravention of the guarantees set forth in section 4(f)(2) [52 USCS § 10303(f)(2)].

Plaintiffs have shown, based on the totality of circumstances, that the political processes

leading to nomination or election in the State or political subdivision are not equally open to

participation by members of a class of citizens, on account of race or color, in that members

of the Hmong community have less opportunity than other members of the electorate to

participate in the political process and to elect representatives of their choice.  Defendants'

act(s) and/or omission(s) substantially affected the rights and privileges of members of

Plaintiffs, a protected class, and hindered their ability to participate effectively in the

political process.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION

[NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS]

140. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all

prior paragraphs of this Complaint.

141. Defendants owed a duty to Plaintiffs to protect them from physical harm while investigating

29

voter registration information and/or enforcing building and safety code enforcement.

142. Defendants breached their duty of care by hiring and failing to properly supervise several employees that caused injury to Plaintiffs.

143. Plaintiffs' serious and severe emotional distress was a reasonably foreseeable consequence of Defendants unlawful and egregious acts and omissions.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
[42 U.S.C. § 1983 – RATIFICATION AGAINST THE COUNTY OF SISKIYOU]

144. Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

145. Sheriff Lopey had final policymaking authority for the County of Siskiyou employees and sheriff's deputies in the county, including all individuals identified herein.

146. Plaintiffs allege on information and belief that Sheriff Lopey ratified his subordinates' acts because he knew of and specifically approved of the pattern and practice of sheriff's deputies in Siskiyou County using excessive force while on duty and unlawfully entering onto private property without a search warrant during their scope of employ, or he delegated his authority to review and approve this use of excessive force and unlawful entry onto private property without a search warrant to others within his chain of command.

147. Upon information and belief, Plaintiffs allege that these acts and omissions were the moving force that caused Plaintiffs injuries.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, see the

following relief:

1. A temporary restraining order and preliminary and permanent injunction, enjoining the Defendants and their agents and employees from entering the private property of anyone without securing a search warrant, by foot, motor vehicle, drone or helicopter, or any other fashion violate of the Fourth and Fourteenth Amendments to the United States Constitution;

2. A temporary restraining order and preliminary and permanent injunction, enjoining the Defendants and their agents and employees from taking continued action against anyone under the 2015 or 2016 Ordinances where Defendants failed to secure a warrant and/or failed to provide advance notice;

3. A temporary restraining order and preliminary and permanent injunction, enjoining the Defendants and their agents and employees from allowing any and all persons under Defendants employ to harass, intimidate, threaten, assault and/or in any way interfere with anyone's right to vote in the November 2016 election, including without limitation, entering onto private property to ask questions about voter registration.

4. For compensatory and economic damages in excess of fifty thousand dollars ($50,000) according to proof at trial;

5. For general damages in excess of fifty thousand dollars ($50,000) according to proof at trial;

6. For an award of punitive and exemplary damages against Defendants according to proof at trial;

7. For an award of attorneys' fees, interest and costs; and

8. For such additional and further relief, including without limitation injunctive relief, as the Court may deem just, necessary and proper.

31

1

2

3

## JURY TRIAL DEMAND

4

Plaintiffs hereby request a jury trial on all issues so triable.

5

6

7

Dated: September 12, 2016       By:

8

Kyndra Miller
Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32